636 A.2d 1162

**Alfred N. RICHARDS and Karen R. Richards, Appellees,**

**v.**

**SUN PIPE LINE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 8, 1993.

Filed Feb. 2, 1994.

430

Charles W. Craven, Philadelphia, for appellant.

James Cunilio, Bryn Mawr, for appellees.

Before WIEAND, OLSZEWSKI and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the judgment entered in the Court of Common Pleas of Chester County, following a jury verdict in favor of appellees in the amount of $5,000.00, plus delay damages in the amount of $1,143.00. Having determined that the lower court incorrectly instructed the jury concerning the method by which damages were to be assessed, we reverse the judgment entered below and remand for a new trial.

Appellees reside at 10 Pine Road, Malvern, Pennsylvania. Their property is subject to an easement owned by appellant. The right-of-way agreement allows appellant to install and maintain a gas pipeline across the property. The agreement also provides that appellant shall pay "any damages which may arise to crops, fences, trees or buildings on said premises from the installation, maintenance and operation of said pipeline." From the time appellees purchased their property in 1985 through the present, a gas pipeline, which is owned and operated by appellant, has run beneath the surface along the rear of appellees' property.

On June 3, 1988, appellant entered appellees' property and damaged four trees which were growing within the easement. Appellant cut down a large Chinese chestnut tree and a large black cherry tree and substantially trimmed back two large pin oak trees. The removal and trimming of the trees were necessary to permit inspection and maintenance of the pipeline in the manner required by law.

Appellees filed the present action to recover damages for injuries to their property due to the loss of the trees. They claimed a loss of privacy which resulted in a decrease in market value of their home. Prior to trial, appellant admitted liability, and, accordingly, the trial was concerned with damages to the property only.

At trial, both appellees testified concerning the reduction in privacy created by the removal of the trees, and both testified that they believed the value of their property was reduced from $160,000.00 to $150,000.00. Appellees also presented the testimony of John D. Hucker, a certified arborist, who stated that the intrinsic, landscaping value of the trimmed and removed trees was $7,871.00. Appellant's sole witness was Richard C. Mayberry, a certified real estate appraiser, who testified that the value of the property both before and after the removal and trimming of the trees was $157,000.00. In other words, he found no reduction in the value of the property. The jury returned a verdict in favor of appellees in the amount of $5,000.00.

Herein, appellant complains that the lower court incorrectly instructed the jury that evidence of the intrinsic value of the trees themselves was a relevant factor to consider when determining the diminution in the value of the property. In a related argument, appellant contends that the appellee's expert should not have been permitted to testify as to the intrinsic, landscape value of the trees. Appellant also submits that appellees' testimony concerning the reduction in the value of their property was legally incompetent. Finally, appellant asserts that since appellees introduced no legally competent evidence of a diminution in their property's value, appellant is entitled to judgment notwithstanding the verdict. While we agree with appellant's assessment of the measure of damages employed below, we reject its conclusions concerning the appellees' testimony. Thus, for the reason that follow, we reverse the judgment and remand for a new trial. We also find that appellant is not entitled to judgment n.o.v.

Instantly, the lower court instructed the jury, in pertinent part, as follows:

The measure of damages when ornamental or fruit bearing trees or growing timber are cut is the difference of the value of the realty before and after. And by that we mean the value of the realty immediately before the cutting took place, and the value of the realty immediately after the cutting took place.

Furthermore, ladies and gentlemen, in cases where the before and after value of the land is an appropriate measure of damages, evidence of the value of the trees themselves is a factor to be considered in the diminution in the value of the land.

\* \* \* \* \* \*

In cases where the before and after value of the land is an appropriate measure of damages, evidence of the value of the trees themselves is a factor to be considered in the diminution of the value of the land.

I use the term, a factor to be considered, advisedly because, in my understanding of the law, the value of the trees is not a dispositive figure, not a—is not dispositive of the question of the reduction of the value, but it is a factor that you may consider when considering what the reduction in the value was.

Trial Transcript, Volume II, pp. 179–180.

■ Contrary to the instruction set forth above, the measure of damages for injury to property, where the injury is deemed to be permanent, is the decrease in the fair market value of the property. *Rabe v. Shoenberger*, 213 Pa. 252, 256, 62 A. 854, 855 (1906); *Ribblett v. Cambria Steel Co.*, 251 Pa. 253, 259, 96 A. 649, 651–652 (1916); *Bumbarger v. Walker*, 193 Pa.Super. 301, 164 A.2d 144 (1960); *Kirkbride v. Lisbon Contractors, Inc.*, 385 Pa.Super. 292, 298, 560 A.2d 809, 812 (1989). Our Supreme Court has expressly stated:

... [W]e have on numerous occasions decided that, when standing timber is destroyed, the damages therefor are to be measured by determining the difference in the value of the land, upon which the trees grew, before and after the injury complained of. *Mahaffey v. New York Central &*

*Hudson River R.R. Co.*, 229 Pa. 285–287, 78 Atl. 143, 140 Am.St.Rep. 730; *Savings & Trust Co. of Indiana v. Penna. R.R. Co.* 229 Pa. 484–489, 78 Atl. 1039; *Bullock v. Balto. & Ohio R.R. Co.*, 235 Pa. 417, 84 Atl. 421. There may be exceptional instances, when the evidence shows the trees in question to have had a selling value separate and apart from the land (for example, trees growing on a nursery farm), where a different rule would apply; but, under the facts at bar, there can be no doubt that the proper way to determine the pecuniary damage suffered by the destruction of the plaintiff's trees was through the application of the ordinary rule just referred to. The only testimony produced, however, relative to the damage thus suffered was the expression of opinion by two witnesses as to the actual money value of the trees without regard to their special connection with the plaintiff's farm, although one of them asserted that the real worth of the trees consisted in the 'value for shedding storms and helping drouths.' Neither of these witnesses showed any special qualification to express an opinion on the market value of trees; *but aside from that, their testimony was based on a wrong theory of the measure of damage, and therefore was incompetent and should not have been received.*

*Ribblett,* 96 A. at 652 (emphasis added).

 Instantly, the lower court not only erred in instructing the jury that they could consider the actual monetary value of the trees as a factor in deciding whether the value of the realty had decreased, but also the court erred in permitting the testimony of appellee's arborist to be admitted. Such testimony, as in *Ribblett, supra,* went to the wrong measure of damages and, as such, was incompetent. Since the court incorrectly instructed the jury concerning the measure of damages, a new trial is warranted.

Appellees cite *Gross v. Jackson Tp.*, 328 Pa.Super. 226, 476 A.2d 974 (1984) and *Bell v. Shetrom,* 214 Pa.Super. 309, 257 A.2d 323 (1969), for the proposition that:

We have grave doubts that damage to trees can be ascertained only by showing the before and after values of

the land on which the trees were growing.... Whatever approach is most appropriate to compensate for the harm should be used, including perhaps the intrinsic value of the trees to the then existing use of the land or the cost of replacement or restoration. Even if the before and after value of the land is an appropriate measure of damages, evidence would be competent as indicative of the diminution of the value of the land.

*Gross,* 476 A.2d at 976, quoting *Bell,* 257 A.2d at 324.

However, in both *Gross, supra,* and *Bell, supra,* the damage to real property was not *permanent* in nature.[1] In *Gross, supra,* the plaintiffs intended to replant the hedges and shrubs that were destroyed. Therein, the intrinsic, i.e., actual, value of those plants was relevant to determine the cost of restoration (or repair) which is the proper measure of damages when the injury is not permanent. *Kirkbride,* 560 A.2d at 812. Similarly, in *Bell, supra,* plaintiff sought to amend his complaint to include not only a claim for damages based upon the diminution in the value of the land but also a claim for damages based upon the cost of replacing the injured trees. Thus, evidence of the actual value of the destroyed trees would be relevant therein to the issue of restoration.

We note, however, that to the extent *Bell, supra,* may be interpreted as permitting the use of intrinsic value of trees as indicative of the diminution in the value of the land, such an interpretation is not only based upon mere *dicta,* but also is in direct conflict with Supreme Court precedent. *See, Sgarlat Estate v. Commonwealth,* 398 Pa. 406, 414, 158 A.2d 541, 545 (1960) ("It is the fact of such loss, not its actual statement in dollars that is the permissible element affecting damage."); *Rabe, supra; Ribblett, supra; Schlichtkrull v. M.P. Oil Corp.,* 301 Pa. 553, 152 A. 829 (1930). Thus, we restate herein the long-established rule that, when the damage to property is permanent, the measure of damages is the reduction in fair

---

1. Instantly, there is no dispute as to the permanent nature of the injury to appellees' property since the trees may not be replaced within the easement, and, even if they were replaced, it would be twenty-five to thirty years before they attained the same stature as those removed.

market value of the land. *Rabe, supra.* To the extent that the trees on appellees' property were destroyed, it is the *fact that the trees were destroyed* that was relevant to determining damages, *not the actual dollar* value of those trees since those trees did not have a selling value separate and apart from the land. *Ribblett, supra.*

We now turn to appellant's contention that appellees' testimony about the reduction in the value of their property due to the removal of the trees was legally incompetent. Upon review, we find no error regarding the admission of said testimony. In *Sgarlat, supra,* our Supreme Court stated:

> Finally, it is urged that the owner is competent to testify to the value of his property. In general he is competent, since he has at least a general knowledge of what he owns. *Hencken v. Bethlehem Municipal Water Authority,* 1950, 364 Pa. 408, 72 A.2d 264. But he is subject to the current rules and occupies no special position as a witness.

*Sgarlat,* 158 A.2d at 545. *See also, Ernsberger v. Zoning Bd. of Adjustment,* 109 Pa.Cmwlth. 373, 380, 531 A.2d 98, 102 (1987), appeal denied 517 Pa. 625, 538 A.2d 878; *Glanski v. Ervine,* 269 Pa.Super. 182, 409 A.2d 425 (1979).

Instantly, appellees testified concerning the value of their real estate. They testified that they believed the loss of privacy caused by the removal and pruning of the trees reduced the value of their property by $10,000.00. Although appellees testified that had not performed any "market" study in arriving at the $10,000.00 figure, they did state that they based their valuation upon information learned about local property values at the time they purchased their residence in 1985. In particular, appellees testified that when they purchased their home they also looked at other homes of similar size which had larger lot sizes. Despite having larger lots, those houses were less expensive because, in appellees' opinion, they lacked trees for aesthetics and privacy.

Upon review, we find appellees' testimony concerning the value of their property was competent. The fact that they were not "experts" in the field of real estate valuation did not

render their testimony incompetent. "The real owner is deemed qualified, by reason of his relation as owner, to give estimates of the value of what he owns *regardless of his knowledge of property values,* and the weight of such evidence is for the jury." *Pavloff v. Clairton,* 146 Pa.Super. 158, 159, 22 A.2d 74, 75 (1941) (emphasis added).

■ Since we find that the testimony of appellees concerning the value of their property before and after the removal and pruning of the trees was competent, we find no basis upon which to award appellant judgment n.o.v. As stated many times, judgment n.o.v. should be granted only in the clearest of cases, and all doubts should be resolved in favor of the verdict. *Golibart v. Reamer,* 415 Pa.Super. 623, 610 A.2d 56 (1992); *Lilley v. Johns–Manville Corp.,* 408 Pa.Super. 83, 596 A.2d 203 (1991), appeal denied, 530 Pa. 644, 607 A.2d 254. However, as we previously determined, the lower court erred in instructing the jury on the proper measure of damages and also erred in permitting appellees' expert to testify concerning the intrinsic value of the trees. Accordingly, we reverse the judgment entered below and remand for a new trial.

Judgment reversed. Case remanded for new trial. Jurisdiction relinquished.